IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MONTGOMERY COUNTY PUBLIC SCHOOLS**<br>850 Hungerford Drive<br>Rockville, Maryland 20850<br><br>      **Plaintiff,**<br><br>v.<br><br>**C.G., a minor, by her parents and next friends, Alejandro Guadarrama and Patricia Yanes**<br>5003 Wyandot Court<br>Bethesda, Maryland 20816<br><br>      **Defendants.** | Civil Action No. 8:25-cv-3048 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT**

**PRELIMINARY STATEMENT**

C.G. is in the Montgomery County Public Schools ("MCPS") district and has been identified as a student with multiple disabilities. C.G. attended pre-kindergarten in the District of Columbia. She attended Wood Acres Elementary School within MCPS for Kindergarten, First, and Second Grade. Following C.G.'s second grade school year (2021-2022), C.G.'s Parents unilaterally placed her at the Lab School of Washington ("Lab School") beginning in third grade. C.G. attended Lab School for third, fourth, and fifth Grade. In accordance with the requirements of the Individuals with Disabilities Education Act ("IDEA"), MCPS finalized an IEP for C.G. for the 2024-2025 school year (fifth grade) during the IEP meeting that took place on July 24, 2024. The IEP team considered updated data from Lab School and input from C.G.'s Parents, the Parents' educational consultant, and representatives of Lab School who attended the meeting.

The IEP team used this data to update the present levels in the IEP and determine C.G.'s current special education needs. The IEP placed C.G. within the Learning Center at Burning Tree Elementary School. The Parents' disagreed with the proposed placement, continued C.G's enrollment at Lab School for the 2024-2025 school year, and requested a due process hearing before an Administrative Law Judge ("ALJ") seeking reimbursement of Lab School tuition for the 2024-2025 school year.

Despite the IDEA's clear requirements and extensive case law interpreting those requirements, the ALJ's decision, dated August 15, 2025 ("Decision", attached hereto as **Exhibit 1**) following the eight-day due process hearing erroneously found: (1) that the IEP for the 2024-2025 school year did not provide C.G. with a Free Appropriate Public Education ("FAPE") in the Least Restrictive Environment ("LRE"); (2) that the Parents' unilateral placement at Lab School for the 2024-2025 school year was appropriate; and (3) that the Parents are entitled to reimbursement for the cost of C.G.'s placement at Lab School for the 2024-2025 school year. MCPS now appeals the Decision.

## JURISDICTION

1.  This Court has original jurisdiction pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and 28 U.S.C. §§ 1331. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  This Court has pendent jurisdiction pursuant to MD. CODE ANN. EDUC. §8-401, *et seq*.  Plaintiff has exhausted the state administrative remedies and appeals to this Court from the Decision of the Administrative Law Judge of the Maryland Office of Administrative Hearings.

## PARTIES

2. MCPS is a local educational service agency as defined by 20 U.S.C. § 1401 with a principal place of business, located at 850 Hungerford Drive, Rockville, Maryland, 20850.

3. C.G. ("the Student" or "C.G.") is a child who resides in Montgomery County, Maryland.

4. Alejandro Guadarrama and Patricia Yanes ("the Parents") are the parents of the Student, and residents of Montgomery County, Maryland.

## FACTUAL ALLEGATIONS

5. The Student was born in 2014.

6. C.G. was diagnosed with a congenital heart defect in utero.

7. C.G. had a pacemaker placed at birth, and she has required several replacement surgeries since birth.

8. On January 17, 2019, while attending pre-kindergarten in the District of Columbia, C.G. suffered a stroke, which resulted in cognitive, physical, and social-emotional difficulties.

9. C.G. began attending Wood Acres Elementary School within MCPS for kindergarten during the 2019-2020 school year.

10. During the fall of 2019, MCPS considered medical documentation, including neuropsychological records, evaluations, and other data provided by the Parents and conducted some of its own evaluations, to determine C.G.'s initial eligibility for special education services.

11. C.G. was found eligible for special education services and MCPS used the data to identify C.G.'s special education needs and prepare an initial IEP for C.G.

12. C.G. qualifies for special education services as a child with a code of Multiple Disabilities.

13. C.G. attended Wood Acres for kindergarten, first, and second grade.

14. The COVID-19 pandemic began in the Spring of 2020, and C.G. finished kindergarten and her entire first grade school year through distance learning from home.

15. Distance learning was particularly challenging for C.G. because she was still experiencing the effects of the stroke that occurred only about a year before the start of distance learning.

16. C.G. started attending Wood Acres in-person for second grade.

17. During second grade, C.G. was placed in the general education setting and had trouble keeping up with the pace of instruction in general education math, reading, and writing classes; she was performing below grade level in those areas. She was, however, able to master the grade level standards and earned "As" as her final grade in PE, music, art, health education, and social studies and a "B" in science during her second grade school year at Wood Acres.

18. C.G.'s Parents unilaterally placed her at Lab School starting in third grade. C.G. attended Lab School for third, fourth, and fifth grade.

19. Prior to the start of the 2024-2025 school year, the Parents and Lab School provided MCPS with updated data from Lab School.

20. On May 6, 2024, DaVonna Holmes, Special Education Supervisor, conducted a Classroom Observation of C.G. at Lab School. During this Classroom Observation, Ms. Holmes observed C.G. in a small reading group and a writing class. The small reading group included one teacher and two students, and the writing class included two adults and nine students. Ms.

Holmes confirmed with the classroom teacher that the behavior observed is representative of the usual behavior for C.G. in the classes observed.

21. The MCPS IEP team reviewed the updated data, which included updated psychological, speech, and occupational therapy information, and prepared a draft IEP for C.G. for the 2024-2025 school year.

22. The IEP team updated the present levels within the IEP.

23. The goals and objectives were not changed because the team did not have data showing that the goals and/or objectives were achieved by C.G.

24. Prior to the start of the fifth grade school year, in accordance with the IDEA, the IEP team, including the Parents, their educational consultant Jennifer Fisher ("Ms. Fisher"), and representatives from Lab School, met on July 24, 2024 to discuss and finalize C.G.'s IEP for the 2024-2025 school year.

25. The IEP team considered the updated data from Lab School and input from C.G.'s Parents, Ms. Fisher, and the representatives of Lab School who attended the meeting.

26. During the July 24, 2024 IEP meeting, MCPS agreed to the addition of 45 minutes of counseling services weekly to meet C.G.'s needs in the areas of self-advocacy and self-management areas of impact.

27. The IEP for the 2024-2025 school year provides a variety of supplementary aids, services, and modifications.

28. Once the IEP was updated, the IEP team needed to determine an appropriate placement for C.G. where the IEP could be implemented.

29. In accordance with the statutory requirements under the IDEA, the IEP team initially considered placement at C.G.'s home school, Wood Acres, however, they determined that the IEP could not be implemented there.

30. The IEP team next considered the Learning Center at Burning Tree Elementary. Based upon C.G.'s current needs at the time the IEP was prepared, the IEP team proposed services within the Elementary Learning Center at Burning Tree Elementary for the 2024-2025 school year, which was the next least restrictive environment on the continuum.

31. The IEP team determined that the IEP could be implemented within the Elementary Learning Center at Burning Tree Elementary.

32. The IEP team concluded that C.G. requires self-contained instruction for academic subjects (math, reading, writing, science, and social studies) and access to a Tier 3 reading intervention, which is provided within the Learning Center at Burning Tree.[1] This determination was based on the current data provided by the Parents and Lab School, which showed that C.G. was performing below grade level in these areas.

33. The IEP team determined that C.G.'s needs could be met within the general education setting, with the support and services identified in the IEP, for lunch, recess, and specials.

34. The Parents agreed to all provisions in the IEP except for the proposed placement within the general education setting with support for lunch, recess, and specials. The Parents expressed their belief that C.G. needed a self-contained setting with the specialized instruction provided at Lab School throughout the entire school day, including for lunch, recess, and specials.

---

[1] A Tier 3 reading program offers several different methods of evidence-based reading intervention that are used to meet the individualized reading needs of each student.

35.     The Parents did not provide the IEP team with data to support their position that C.G. could not obtain educational benefit in the general education setting with support for lunch, recess, and specials.

36.     C.G.'s Parents rejected the IEP for the 2024-2025 school year.

37.     C.G. attended Lab School for the 2024-2025 school year.

38.     On or about February 19, 2025, the Parents filed a request for an administrative due process hearing seeking an order requiring MCPS to reimburse the Parents for their unilateral placement of C.G. at Lab School for the 2024-2025 school year.

39.     The due process hearing took place over eight (8) days: June 11, 12, 16, 25, 26, 27, and July 7 and 15, 2025.

40.     Prior to the start of the hearing, MCPS filed Motions in Limine, including one requesting that the ALJ exclude certain exhibits from the hearing that were not timely disclosed by the Parents, including a Neuropsychological Evaluation performed by the Parents' expert witness, Dr. Vincent Culotta.

41.     The Neuropsychological Evaluation included an extensive record review and evaluation of C.G. conducted on March 19, 2025 and April 18, 2025.

42.     The ALJ granted MCPS' Motion and excluded the untimely exhibits, including the Neuropsychological Evaluation.

43.     Dr. Culotta was not a member of the IEP team that developed the IEP for the 2024-2025 school year and the MCPS IEP team did not have any evaluation from Dr. Culotta at the time the IEP was developed for the 2024-2025 school year.

44. MCPS objected to Dr. Culotta's testimony based on the exclusion of his Neuropsychological Evaluation, which was the extent of his involvement in this matter. Nevertheless, the ALJ allowed Dr. Culotta to testify.

45. During the hearing, the ALJ stated that he is a wheelchair user and explained his personal feelings about the location of the elevator at Burning Tree Elementary School in relation to the stairs within the building:

> . . . I use a wheelchair, I've been using a wheelchair for 35 years. So, I mean, when I hear, like -- that's why my question was about the elevator at the steps. To me, that's not the best place for an elevator access, because that means I'm sitting, waiting to get into my elevator while people are using the stairs.

46. On August 15, 2025, the ALJ issued his written Decision finding that: (1) "the Parents established that the July 24, 2025 IEP did not provide the Student with a FAPE in the LRE because the Student required small group, specialized instruction throughout the school day due to her social, emotional/behavioral, and executive functioning deficits"; and (2) "the Parents' unilateral placement of the Student at the Lab School of Washington, D.C., for the 2024-2025 school year was appropriate"; and (3) "the Parents are entitled to reimbursement for the cost of the Student's placement at the Lab School for the 2024-2025 school year." Decision at 39.

47. The ALJ admittedly "placed great weight" on the testimony of Parents' expert witness, Dr. Vincent Culotta, who was not a member of the IEP team that developed the IEP for the 2024-2025 school year and did not provide any information to the IEP team for consideration in developing the IEP for the 2024-2025 school year. Decision at 30.

48. The ALJ acknowledged that "[t]he MCPS' witnesses' collective opinions are rooted in a comprehensive review of Student's educational record and following established protocols for special education services and LRE determination." Decision at 36. He further

8

opined that "the testimony of the MCPS witness impressed me as opinions based on what MCPS had available and what was "next" on the continuum of placement . . ." *Id.*

49.   The ALJ found that "the testimony of the MCPS witnesses involved in the IEP's creation or supporting its validity indicated a limited understanding of the Student's special education needs with no current direct experience with the Student." He explained that, for this reason, he "placed greater weight on the Parent's witnesses who know the Student well." Decision at 36.

50.   The ALJ considered C.G.'s progress at Lab School as "an important factor" in determining the appropriateness of the MCPS IEP for the 2024-2025 school year. Specifically, the ALJ stated that "[t]he Student's actual progress during the period of the contested IEP is an important factor demonstrating that the IEP as proposed by the MCPS was not reasonably calculated to confer meaningful educational benefit." Decision at 33-34.

51.   The ALJ's Decision is erroneous and should be reversed for reasons including, but not limited to, the following:

   a. The ALJ erroneously failed to find that the IEP and placement within the Learning Center at Burning Tree Elementary School for the 2024-2025 school year provided C.G. with a FAPE in the LRE.

   b. The ALJ's findings were not regularly made.

   c. The ALJ applied the incorrect legal standards and ignored evidence.

   d. The ALJ failed to conduct a LRE analysis based on the capacity of the placement to carry out all services in the Student's IEP.

   e. The ALJ excluded Dr. Culotta's Neuropsychological Evaluation but erroneously allowed Dr. Culotta to testify.

    f. The ALJ erroneously relied upon information that the IEP team did not have at the time the IEP was developed for the 2024-2025 school year.

    g. The ALJ erred in weighing testimony and evidence.

    h. The ALJ erred in ruling on objections.

    i. The ALJ's reliance on C.G.'s progress at Lab School as an "important factor" in determining the appropriateness of the IEP for the 2024-2025 school year is contrary to applicable law.

    j. The ALJ failed to give adequate deference to the opinions of the MCPS witnesses.

    k. The ALJ erroneously concluded that, despite complying with the statutory requirements under the IDEA for determination of special education services and LRE, MCPS did not provide a cogent and responsive explanation for their decisions.

## COUNT I

52. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 51.

53. The ALJ erred in finding that the school system did not offer the student a free appropriate public education for the 2024-2025 school year and in ordering reimbursement for the Student's placement at Lab School for the 2024-2025 school year.

54. The ALJ ignored the supports and services included in the IEP for the 2024-2025 school year, which would have been provided to C.G. throughout the school day in both the general education and special education settings.

## COUNT II

55.     Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 54.

56.     The ALJ's findings were not regularly made.

## COUNT III

57.     Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 56.

58.     The ALJ erred in relying on C.G.'s progress at Lab School in determining the appropriateness of the IEP for the 2024-2025 school year.

## COUNT IV

59.     Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 58.

60.     The ALJ erred in permitting Vincent Culotta to testify after excluding his report.

61.     The ALJ erred in relying upon the testimony of Vincent Culotta, who was not a member of the IEP team that developed the IEP for the 2024-2025 school year.

62.     The ALJ erred in considering evidence that the IEP team did not have at the time the IEP was developed for the 2024-2025 school year.

## COUNT V

63.     Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 62.

64.     The ALJ erred by finding that, despite conducting a comprehensive review of C.G's educational record and following the statutory requirements under the IDEA for

determination of special education services and LRE, MCPS did not provide a cogent and responsive explanation for their decisions.

65. The ALJ erred by giving greater weight to the Parents' witnesses testimony regarding C.G. rather than deferring to the school authorities, as required under the IDEA.

66. The ALJ erred by giving less weight to the school authorities simply because they had "no current direct experience with the Student," because then parents would have no incentive to ever place their students in a public school, and could simply make unilateral placements in private schools at the outset and then demand reimbursement, as the Parents did here. This is directly contrary to the main objective of the IDEA, which states that educational benefit must be provided in the least restrictive environment appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers. 20 U.S.C.A. § 1412(a)(5)(A); 34 C.F.R. § 300.114(a)(2). MCPS should not be faulted for Parents' unilateral decision to place C.G. in a private school.

## COUNT VI

67. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 66.

68. The ALJ misapplied the LRE standard.

69. The ALJ erred in his interpretation of the IDEA's requirements regarding the continuum of alternative placements and the LRE.

70. The ALJ erred by faulting MCPS for applying the correct process under the IDEA to determine the LRE for C.G.

## COUNT VII

71. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 70.

72. The ALJ erred by considering his personal experience as a wheelchair user in evaluating the appropriateness of the physical environment at Burning Tree Elementary School.

## COUNT VIII

73. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 72.

74. The ALJ erred by ignoring the testimony of the principal of Burning Tree Elementary School, Jennifer Redden, regarding the location of the elevator in relation to the Fifth Grade Learning Center classrooms and inaccurately relying on the testimony of the student's mother.

## COUNT IX

75. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 74.

76. The ALJ erred in overruling an objection that a cross-examination question beyond the scope of direct by finding that the question was "within the scope of cross."

## COUNT X

77. Plaintiffs repeat and incorporate herein the allegations set forth in paragraphs 1 through 76.

78. The ALJ erred by failing to give proper weight to the fact that the Parents did not object to the IEP's goals and services, but only to the placement recommendation.

WHEREFORE, the Plaintiff Montgomery County Public Schools respectfully requests that this Court:

1. Reverse the decision of the ALJ;

2. Find that the proposed IEP for the 2024-2025 school year was appropriate for the Student;

3. Enter judgment for MCPS;

4. Find that the Parents are not entitled to tuition reimbursement for placement at Lab School for the 2024-2025 school year;

5. Grant MCPS its proper costs and expenses, including any cost associated with maintaining C.G.'s placement at Lab School during the pendency of this case;

6. Award MCPS reasonable attorneys' fees;

7. Provide MCPS with such other and further relief as the nature of this case and justice so require; and

8. Grant such other and further relief as this Court deems just and proper.

[SIGNATURE ON THE FOLLOWING PAGE]

Date:  September 15, 2025                                  Respectfully submitted,


                                                     /s/ *Robin Silver*
                                                     Robin Silver (Fed. Bar No. 03306)
Taylor M. McAuliffe (Fed. Bar No. 20768)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
(410) 727-6464
rsilver@milesstockbridge.com
tmcauliffe@milesstockbridge.com

Emily B. Rachlin (Fed. Bar No. 17400)
Montgomery County Public Schools
850 Hungerford Drive, Room 156
Rockville, Maryland 20850
(240)-314-4840
emily_b_rachlin@mcpsmd.org

*Attorneys for Plaintiff,*
*Montgomery County Public Schools*

15